Good morning ladies and gentlemen. Our first case for argument this morning is the estate of Logan against South Bend. Mr. Flaxman, may it please the court. The defendant, who was then a South Bend police officer, shot and killed, plaintiff's The officer, Mr. O'Neill, was wearing a body camera during the event. He turned it on after the shooting. The officer called for an ambulance at about 333 and 9 seconds a.m. His body camera was on at 334-41 when he said, with leaving out the expletives, he threw a knife at me, so I shot him. That should be the end of defendant's motion for summary judgment. The meaning of so, the conventional meaning of so, is that with the result that I saw the car in the area was an answer in my complaint, so I decided to pull them over. That's Delaware versus Prowse. The defendant, or the suspect, was actively resisting my command, so I decided to give him a more forceful tug. That's Gupta versus Mello. And so, if the officer said, as he's recorded on his body camera saying, he threw the knife at me, so I shot him, the officer knew that he was confronting an unarmed man and then he shot him. That's unreasonable use of force. If the officer had said, the man was holding the knife over his head and I was afraid he was going to throw it at me, so I shot him, plaintiff loses. That's the reasonable use of force. But once that knife was thrown and the officer had no reason to believe that Mr. Logan was armed. Do you believe that the Constitution enforces particular rules of grammar? I think a jury enforces particular rules of grammar, and this should have been a jury deciding what are the facts. On summary judgment, traditionally, we look at the record in the light most favorable to the party opposing the motion. In that case, this is the plaintiff. The plaintiff was entitled to all inferences drawn in his favor. In this case, the district jury would believe or would give any weight to the excited utterance, minutes after the fatal shot was fired that he threw the knife at me, so I shot him. This should have been a trial. A jury would be entitled to find for either the plaintiff or the defendant, but it should not have been summary judgment. I think that's well set out in the brief, and I don't think we're talking about a code of conduct by the Constitution. We're talking about the reasonable use of force, which the Supreme Court has said is part of the Fourth Amendment. I tend to agree that those, to use your language, initial excited utterances, before he turns on the body camera, before he's called upon to explain it to an officer, that those are really key and interesting to look at, what he says in the initial excitement after the encounter. I'm wondering if you think we ought to look at that first statement that you highlighted for him, he threw the knife, so I shot him, or are all three of those statements that he initially utters, you know, before he's in an interview with the investigative team, important to look at? Everything's important to look at. Everything that he said is important to look at, but we can't just, as the district judge did, said, I'm not going to give any credit to the excited utterance that so I shot him. I think the reason for the hearsay exception of excited utterances is that we believe, wrongly or rightly, that when somebody makes an excited utterance they're telling the truth. They're acting under the heat of the moment and they're not prevaricating, they're not thinking about what really happened after they talk with a sergeant at the scene and turn off the body camera. That being the case then, I wonder what you want to tell us about the third quote-unquote excited utterance, because the third one is he goes to throw the knife at me, so I shot him. That's a jury question. I mean that's my position. Our position is that it's exactly a jury question. The jury can sort all this out and decide whether he's getting his story together as time passes, or whether he didn't have his story together, or he was confused and shocked at killing a man when he made the statement about so I shot him. That's a jury question. Mr. Flaxman, can you go, a second ago you said that in your view the district court disregarded the statement, so I shot him. I didn't read the district court as ignoring the statement, to the contrary. I think the district court was well aware of the statement, and I think what the district court said was that, in the district court's view, it just didn't see, as it put it, you know, meaningful inconsistency across the totality of the statements. I'm looking right at its opinion, but the district court ignored the so statement. It accounted for the statement. It just resolved the ultimate question in a way that you disagree with. I apologize to the district court for saying ignore. He discounted the statement. What he said in the portion that I'm relying on is that no reasonable jury could objectively view this incident as anything but split-second and that's on the body camera, that's recorded, that he threw the knife at me, so I shot him, could credit that and save it. That was the unreasonable use of force. I knew he wasn't, the officer knew he didn't have a knife, and he shot him. He was angry at getting, having a knife thrown at him. Let me ask you this, the question that comes to mind here for me is that there's no doubt by both sides' account this all happened very, very quickly and ended in a tragic death. There's no doubt about it that way. Is there any possible analysis that would not afford Sergeant O'Neill qualified immunity? And if so, what would it be? Well, if the facts are as we believe they should be viewed in the light most favorable to plaintiff, that the sergeant knew that the man, that Mr. Logan had one knife, Mr. Logan threw that knife from seven or eight feet away and then shot him, that's unreasonable use of force. I think there's precedent saying you can't shoot an unarmed man who's committed a burglary to auto. I think we cite a case for that proposition. Right, I mean I'm aware of a decision from our court called Strand, and there was a possibility in Strand that a police officer fired a shot, you know, seven, eight, ten seconds after an individual had surrendered and put his hands in the air. And that we'd say, well, if that's true, that is an unreasonable use of force. But here you don't have any, even by both sides' account, you don't have any timeline like that. That's because there's only one witness to the event, who's the officer who didn't have his body or if it is a split second where he's shooting Mr. Logan because Mr. Logan had the temerity to throw a knife at him. And the other thing that we all lose sight of in this case is that knives are dangerous because they're sharp-edged weapons. You get close, you could cut somebody and they'll bleed out. Throwing a knife is a difficult skill to learn and it's not surprising, and the officer also didn't have a point, there's a picture of the knife in the appellee's brief. And it's hard to think that throwing a knife that doesn't have a point is something, is the use of deadly force by Mr. Logan, throwing the knife. But we don't know how much time actually passed. We know that the officer said, he threw it at me so I shot him. There could have been more verbal commands, get on the ground, get down. Let me ask you this. So our case law is that if an officer is being threatened with a weapon, a weapon, you know deadly force is reasonable, the use of deadly force. So what's your position if Officer O'Neill, if you've already said Logan's holding the knife threatening him, plaintiff loses. Okay, so Logan's holding the knife threatening him, then Logan throws it. If would a conclusion that that still falls within deadly force, because he doesn't know at that point is a knife gonna hit me, is it gonna hit me in artery, what's it gonna do to me, I'm just seeing the man holding it and start to throw it. He threw it at me. If it hasn't landed, is a conclusion that that is still deadly force, is that a failure to view the facts in the light most favorable to Logan and that's all it is, open and shut? That's a jury question about whether he shot at the same time, whether he shot, whether he, whether he shot, whether the first bullet hit him was the deadly one or the second bullet that hit him was the deadly one. Those are jury questions, that's why we have juries. We don't have, we still have the Seventh Amendment which resolves disputed questions of fact and we shouldn't be speculating about these things, we should let the jury decide it. Jury could very well find for the should not be summary judgment. There are other points that are discussed in the brief, the most interesting one for this discussion we're having now about inferences about impeachment. The district judge said well I know he's been convicted of a felony but that was after the events took place so I'm not going to consider the felony, even if the felony goes to truth-telling. I don't think that's in Rule 609 that the conviction has to be before the incident occurs and the district judge, that might not have been enough by itself to warrant the grant, to warrant the denial of summary judgment that the officer had impeachable offense but it's something that district court should have considered in deciding if there was a disputed question of fact that could, that warrant the trial. The other interesting question. Can I ask you a question on that Mr. Flaxman? I mean I understand the argument you're making, I understand why you're making it. What troubles me about it is it seems to lack a limiting principle to such a degree that's very, very much at odds with the way we In other words, if a trial is warranted, summary judgments not allowed, every time a non-moving party comes forward with something raising questions about the credibility, you know, of another witness's testimony or account but it's unrelated to the conduct at issue and we have to send all of that to trial. Wouldn't that really radically change our Rule 56 practice? It would and that's why we're not advocating. So what rule would you ask us to announce? If you could just distill it to a sentence or two. The rule is that the district judge should consider impeachment by conviction of a felony in considering whether there's a genuine disputed question of material fact. It's not that it's not enough by So in all summary judgment cases, if someone on the moving party's side has been convicted of a felony, that needs to go to trial because that... It's something that can be considered by the district judge. We're not saying that a district district judge weighs inferences and if there's a material dispute then there should be a trial. But our position is not that that's enough by itself to warrant the denial of summary judgment. It's just a factor that the district judge abuses his or her discretion in not considering. And there are very few cases where police officers have shoot people and then have felony convictions when they come to trial. I can't think of any others that actually went to I think I have to do this in ten seconds. The expert was going to say that the national practice is when you're someone is attacking you or threatening you with a knife is to keep shooting until the threat is exhausted. That should have been considered in summary judgment. Thank you. Thank You Mr. Flaxman. Mr. Agostino. Good morning and may it please the court. The record was clear in this case that the timeline that was involved here with respect to this was the knife thrown before, during, or after was a compressed time of less than a second. And Sergeant O'Neill testified to that. That testimony was not contradicted anywhere. And the district court judge did give careful analysis to the totality of the circumstances and the totality of the statements that were made following the shooting. Well you know I think it's a it's interesting to say that wasn't contradicted anywhere. I mean how can you contradict it? Mr. Logan is dead. The police officer is the only witness about this timeline. Sure we have cases that we have circumstantial evidence, other physical evidence, but this timeline question that all comes from from Officer O'Neill. And so how should we consider that? How is a plaintiff ever going to be successful in a case like this where the victim is dead? And isn't that so then shouldn't it ultimately be a question for the fact finder about whether they believe the defendant officer who's the sole source of the information here? Not across the board and not in this case. And the reason for that is that sometimes and that's why the courts have said you have to give careful review in a case like this where the only off the only witness is the officer that's filed for summary judgment in this case. So let's look at what is the forensic evidence and what does Sergeant O'Neill say and how does that match up with the forensic evidence? There's nothing in the forensic evidence here that contradicts them. He talked about the knife in the hand of Mr. Logan. The knife was found. He talked about firing two shots. Where were the casings? They were exactly where they were supposed to be based on the position of Sergeant O'Neill when he shot. The knife actually hit Sergeant O'Neill. He was examined at the emergency room. There was evidence of the knife striking him. The position of the vehicles afterwards. The other materials that were recovered at the scene. All of this is consistent. The angle of entry is consistent with what Sergeant O'Neill said. So that in this case there is no reason to completely disregard what Sergeant O'Neill says. He gave an account of what happened. He gave it right after. It was a split-second decision on the shooting and when you look at the forensic evidence it matches up with what Sergeant O'Neill says. You know I looked through the record. Why is it no one asked Sergeant O'Neill and certainly the city didn't put it forward about the perceived inconsistency between his first statement, he threw the knife so I shot him, and his third statement, he goes to throw the knife so I shot him, and then all the subsequent statements were to really focus on how quickly it happened and seemed to get rid of this notion that there was causation between the knife being thrown and the shooting. I think that if you look at the again the totality of the statements they're all said within right after the shooting. The three or four statements are said right away. His first statement to the 9-1-1 when he calls for the ambulance doesn't give any statement at all in terms of sequencing of knife throwing or shooting and in the other statements talk at all about this how much time went by because you can read this and reasonably should read the sequence of events and the cause as indicating that it all happened contemporaneously. Then that's what the district court judge correctly did in this case and that's why the district court judge I think correctly said it doesn't make a difference whether the after the knife was released or right before they released or as your honor pointed out as he goes to throw the knife and the bullet and the knives pass. But what if a juror a reasonable juror wants to look at it and really give weight to that first statement? I think that that's going to then cause this court to I think I think rewrite the way we look at these kinds of cases and in this sense this is a still a split-second decision. According to O'Neill. There's no other evidence to suggest otherwise. There's no evidence of how much what does the so mean in this case and the district court was also correcting in its analysis in that point. There if if you're asked to throw out what sergeant O'Neill says what's the other evidence that causes a conflict? It's it's speculation. It's conjecture. It's a hunch. It's something that's not admissible evidence and that's why summary judgment was proper because when summary judgments filed in a case like this the burden is on the plaintiffs to come back in response and say wait a second there's a conflict in the evidence that conflicts with what sergeant O'Neill says. If we take away what sergeant O'Neill says here what are we left here and that's what the district court said. You have nothing. You're offering us nothing else. Well I don't think Mr. Logan's estate is asking the court to take out what sergeant O'Neill says. I think Mr. Logan's estate is asking the court to look at what sergeant O'Neill says and see an inconsistency there that the district court disagreed with. The district court said that there was no meaningful separation in time between the knife throwing and the shooting and and again we look at under the Supreme Court case of Graham and in the case that come after that from a reasonable officer perspective facing the circumstances that sergeant O'Neill faced did he perceive an imminent threat of injury to himself at the time that he fired and the answer is yes because he's got a guy coming at him with a knife and he says I was afraid he was gonna come down on me with that knife and as he's backing up to the car he's running out of space. Mr. Logan does not respond to his commands and he fires. He stops firing only after Mr. Logan stops. The knife's already hit him and is on the ground. He sees where the knife is. Mr. Logan's no longer approaching. At that point he stopped shooting but up that point he had perceived a risk of imminent threat to himself. He wasn't angry. He was scared for his life and the law says that under those circumstances he's entitled to use deadly force. That the use of deadly force in that situation is reasonable and that that's that's the case that we have here so yes they're saying that we want to if you consider what O'Neill says then the summary judgment is is correct it's proper. If you disregard what O'Neill says then there's no other evidence to go by so in either case any way you look at it summary judgments appropriate because you can't you can't let the case go forward of just on speculation and that's what we're left with in this case. It's our position that the district court judge did in fact give very careful analysis because this is a case in which the only witness is the officer and in that careful analysis reached the correct conclusion. What O'Neill said was consistent with the forensic evidence nothing in the forensic evidence contradicted what he said and we're left with the split-second shooting that should not be second-guessed. For those reasons the trial court should be affirmed and granted a summary judgment. Thank you. Thank you counsel. Anything further Mr. Flaxman? Hearing none, thank you very much. The case is taken under advisement and the court will take a brief recess before calling the second case.